Filed 8/30/16  P. v. S.S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>S.S.,<br><br>         Defendant and Appellant. | A147461<br><br>(Contra Costa County<br>Super. Ct. No. J12-01482) |

Appellant S.S., who was formerly a ward of the court, appeals from an order of restitution and from orders relating to a subsequent violation of probation.  Appellant's court-appointed counsel has filed a brief seeking our independent review of the record, pursuant to *People v. Wende* (1979) 25 Cal.3d 436, to determine whether there are any arguable issues for review.  Appellant has also been informed of her right to file supplemental briefing, and she has not done so.  After our independent review of the record, we find no errors or other issues requiring further briefing, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A juvenile wardship petition was filed on October 23, 2012 alleging that appellant had committed two felony counts of grand theft (Pen. Code, § 487, subd. (a)).  According to the Contra Costa County Probation Office Report, appellant originally denied the allegations, and the matter was set for pretrial conference.  Appellant subsequently left the group home in which she had been living and failed to make a court appearance in

1

December 2012; after that, a warrant was issued for her arrest and the matter remained unresolved.[1]

More than two and a half years later, appellant was arrested on a bench warrant and detained in county jail. The complaint was amended; count 1 was reduced to a misdemeanor, and count 2 was dismissed. At a jurisdictional hearing on September 8, 2015, the juvenile court sustained the misdemeanor theft allegation (Pen. Code, § 487, subd. (a)), and appellant was released from the county jail. It appears from a minute order that appellant had dropped her contest to juvenile court jurisdiction, and admitted, after advisement of rights, a misdemeanor violation of Penal Code section 487, subdivision (a).

On October 2, 2015, the juvenile court placed appellant on non-wardship probation until January 19, 2016 (the date of her 21st birthday), with conditions. One of the conditions of appellant's probation was that she not use or possess any illegal drugs and that she submit to drug and alcohol testing.

The issue of victim restitution still remained for the juvenile court to determine. Appellant was on probation for misdemeanor theft of $2,000 from Darlene Gardner, who had then been her foster mother. Without Gardner's knowledge or permission, appellant got access to Gardner's ATM card and withdrew funds from Gardner's credit union account on multiple occasions. At a contested restitution hearing on November 20, 2015, appellant testified that she had made an oral agreement to repay Gardner $199 per month, and that she had already paid about back approximately $1,200 of the stolen funds. Appellant admitted she had nothing in writing acknowledging that she had paid Gardner any money. At a continued session of the restitution hearing on December 11, 2015, Gardner testified that S.S. had never made any restitution of the stolen funds, and that none of the money that Gardner had received for providing housing to S.S. was going

---

[1] When she was six years old, appellant had been removed from her biological mother's home. Appellant lived in a succession of foster homes, and for the last five years lived in a foster home with Darlene Gardner as her foster mother. Gardner is the victim of the theft in this matter.

2

towards S.S.'s repayment for the theft.  Gardner testified that S.S. "had talked to me millions of times about paying back monies she owed me, but it never happened."  After listening to the testimony, the juvenile court judge stated that Gardner was credible and he believed her testimony.  He did not believe appellant; he thought she had committed perjury, and that she was also "impeached by the fact that she's alleged to have committed these crimes."  The court ordered appellant to pay $2,000 in restitution to Gardner.

On November 30, 2015, appellant had tested positive for THC, and a petition was filed for violation of her probation.  At the conclusion of the restitution hearing, the juvenile court turned its attention to the probation violation.  After being advised of her rights, appellant admitted the violation at the hearing on December 11, 2015.  The juvenile court judge found that appellant understood her rights, had knowingly and intelligently and voluntarily given up her rights understanding the consequences, and that there was a factual basis for appellant's admission.[2]

---

[2] Initially, appellant's counsel stated the S.S. would waive formal arraignment and deny the allegations of the probation violation.  The juvenile court entered the denial, and announced that S.S. would be remanded, and the matter would be set on a time-not-waived basis for a jurisdictional hearing.  Appellant's counsel then stated. "I think, then, [S.S.] will admit the allegations, and we could just set it over on a time-not-waived basis . . . ."  It was then that appellant was arraigned and advised of her rights, and she then admitted the probation violation.  After a recess, the matter was recalled, and the juvenile court stated that it had been brought to his attention that S.S. could not be remanded to custody at that time because she was a non-ward; as such, the court revoked its prior order remanding her to custody.  At that point, appellant's counsel sought to withdraw S.S.'s plea, because, according to counsel, S.S. admitted a violation "only because she was going to be remanded and by misadvice of her counsel."  The juvenile court denied the motion, stating, "[i]t sounds like to the court there are games being played here," but permitted appellant's counsel to "file a motion to revoke her admission, but I'm going to set the matter for disposition on December the 28th . . . for disposition with regard to her probation violation, and if you file something we can hear it then.  But, you know, the numbers in that report [apparently referring to drug test results] are quite high so it appears to the court that—that an admission would have been totally appropriate under the circumstances."  S.S. was released on her own recognizance, and it does not appear that defense counsel ever made a further motion to withdraw the plea.

3

On January 7, 2016, at the dispositional hearing on the probation violation, the juvenile court judge expressed concern that "[o]ne of the issues for the court, frankly, is—is the perjury that was so blatant that appeared in front of me. I'm very upset about it. The victim came in and testified that absolutely no restitution had been paid and that there was no such agreement that [S.S.] and the victim entered into. So that means when [S.S.] took the stand, she basically lied through her teeth." After hearing argument from counsel, the juvenile court reinstated appellant's wardship and ordered her to be placed in county jail for five days. Referring to the testimony at the disputed restitution hearing, the juvenile court judge stated that "it became very apparent that [S.S.] had took the witness stand and then lied under oath, and, you know, I take these oaths very seriously. I take the testimony very seriously. And it wasn't anything that [appellant's attorney] did, it's what you told her, and so she put you up there to do what she believed was the right thing to do, to have—to reduce what you owed, but it was all a story. [¶] So it is very disappointing, and I don't think you learned anything from this because what you did was you committed perjury in this court. This is a very serious deal." The juvenile court judge stated the disposition had a "rehabilitative purpose, and that is that she has to know that she's responsible for what she does. I can actually hold her until the 19th. I'm using considerable restraint given what she did." On January 12, 2016, her probation was terminated as unsuccessful. Appellant turned 21 on January 19, 2016.

## DISCUSSION

We have reviewed the record on appeal in its entirety and conclude that there are no meritorious issues to be argued.

Appellant was at all times effectively represented by counsel, who protected her rights and interests.

We see no error in the juvenile court's jurisdictional findings or dispositions. No ruling by the juvenile court admitting or denying evidence amounted to an abuse of discretion or legal error.

The juvenile court's order granting restitution is supported by substantial evidence.

4

We conclude there are no arguable issues within the meaning of *People v. Wende*, *supra*, 25 Cal.3d 436.

## DISPOSITION

The judgment is affirmed.

_____
Miller, J.

We concur:

_____
Kline, P.J.

_____
Stewart, J.